UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KAMEKA B., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br> Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 21 C 860 <br><br> Magistrate Judge Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kameka B.[1] seeks judicial review of the final decision of the Acting Commissioner of Social Security denying her application for Disability Insurance Benefits and Supplemental Security Income Benefits. Kameka asks the Court to reverse and remand the administrative law judge's ("ALJ") decision, and the Commissioner moves for its affirmance. For the following reasons, the Court affirms the ALJ's decision.

## BACKGROUND

Kameka's work history includes being an administrative assistant, a bill collector, and a paratransit driver. (R. 362). On September 13, 2018, Kameka applied for disability insurance benefits, and on November 16, 2018, she applied for social security income. *Id.* at 13, 135, 152. At the time of her applications, Kameka was 41 years old, and her alleged onset date is July 20, 2018 due to schizoaffective disorder, bipolar disorder, obsessive compulsive disorder, anxiety disorder, asthma, migraines, degenerative disc disease, arthritis, glaucoma, and fibroid tumors. *Id.* at 134, 135, 151, 152.

---

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by her first name and the first initial of her last name or alternatively, by first name.

On July 27, 2020, the ALJ issued a decision denying Kameka's application for disability benefits and social security income. (R. 13-28). The opinion followed the required five-step evaluation process. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. At step one, the ALJ found that Kameka had not engaged in substantial gainful activity since July 20, 2018, the alleged onset date. *Id*. at 16. At step two, the ALJ found that Kameka had the severe impairments of sciatica, lumbar facet joint arthropathy, lumbar degenerative disc disease and radiculopathy, asthma/chronic obstructive pulmonary disease, obstructive sleep apnea, migraines, obesity, schizoaffective disorder, bipolar type, posttraumatic stress disorder, and anxiety. *Id*. At step three, the ALJ determined that Kameka did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). *Id*. at 17.

The ALJ then concluded that Kameka retained the residual functional capacity ("RFC") to perform sedentary work with the following limitations:

> cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; cannot work around hazards, such as unprotected heights and exposed, moving, mechanical parts; cannot tolerate more than occasional exposure to extreme cold or extreme heat, humidity, fumes, odors, dusts, gases, poor ventilation, and other pulmonary irritants; can understand, remember, and carry out simple work instructions and can sustain concentration to perform simple, repetitive tasks; can interact briefly and superficially with coworkers; can perform job duties that do not involve tandem tasks or teamwork; should not have more than incidental contact with the public; needs to work in a low pressure and low stress work environment defined as one requiring only occasional and simple, work-related decision-making, occasional changes in the work setting, no work at a production rate pace, such as assembly line work or other work requiring rigid quotas; and should be limited to jobs requiring no more than occasional far acuity.

*Id*. at 20. As a result of the RFC finding, the ALJ determined at step four that Kameka did not have any past relevant work. *Id*. at 26. However, at step 5 the ALJ found that considering

Kameka's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Kameka can perform, such as: document preparer, address clerk, and cutter/paster. *Id.* at 27-28. Because of this determination, the ALJ found that Kameka was not disabled. *Id.* at 28. The Appeals Council denied Kameka's request for review on December 11, 2020, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1; *Prater v. Saul*, 947 F.3d 479, 481 (7th Cir. 2020).

## DISCUSSION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform her former occupation; and (5) whether the claimant is unable to perform any other available work in light of her age, education, and work experience. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4); *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992); *Zalewski v. Heckler*, 760 F.2d 160, 162 (7th Cir. 1985). These steps are to be performed sequentially. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4). "An affirmative answer leads either to the next step, or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski*, 760 F.2d at 162.

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Furthermore, the Court may not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the" ALJ's. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Nonetheless, where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

In support of her request for reversal and remand, Kameka makes four arguments:[2] (1) the ALJ erred at step 5 of his evaluation; (2) the ALJ erred in his evaluation of Dr. Levitan; (3) the ALJ erred in his evaluation of the RFC; and (4) the ALJ erred in his subjective symptoms analysis. Because the ALJ's decision is supported by more than a mere scintilla of evidence and a reasonable mind can accept this evidence as adequate to support the conclusion, the Court affirms.

**A.      Step 5**

At step 5, the ALJ determined, relying on the vocational expert's testimony, that Kameka could perform the requirements of three occupations: document preparer, address clerk, and cutter/paster. (R. 27, 28). At the hearing, the vocational expert testified that 46,000 document preparer jobs exist in the national economy, as well as 12,000 addresser jobs, and 21,000 cutter/paster jobs. (R. 109). *see Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) ("1,000 jobs is a significant number"). Kameka argues that the addresser and cutter/paster jobs are obsolete

---

[2] Prior to this opinion, Kameka withdrew a constitutional argument made in her briefing. Doc. [21] at 15-16.

4

and do not exist in significant numbers. Therefore, Kameka contends that the ALJ's adoption of the VE's testimony at step 5 was erroneous.

A claimant forfeits any challenge to the VE's testimony if not raised at the hearing unless the vocational expert's opinion conflicts with the Dictionary of Occupational Titles (DOT). *See Coyier v. Saul*, 860 Fed. App'x. 426, 427-28 (7th Cir. 2021) ("Coyier waived any challenge to the VE's testimony by failing to ask any questions to reveal shortcomings in the job-number estimates."); *Collins v. Berryhill,* 743 F. App'x 21, 26 (7th Cir. 2018) ("Collins forfeited that challenge by not objecting at the hearing."); *Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016) ("Brown also forfeited her argument regarding the vocational expert's testimony . . . by failing to object during the hearing."); *Liskowitz,* 559 F.3d 73 at 744 ("[S]he forfeited this argument by failing to object to the VE's testimony during the hearing.").

Kameka's argument as to whether the cutter/paster and address clerk jobs are obsolete is forfeited as she did not raise it at the hearing with the vocational expert. Kameka points to a PowerPoint presentation she found on the agency's website for the basis of her argument. The alleged presentation, from 2011, states that it was doubtful that the jobs of addresser and cutter/paster exist in significant numbers.[3] Doc. [21] at 8. However, Kameka was represented by counsel, and she had the opportunity to question the VE about the two jobs she now challenges, but she did not do so. Thus, as it stands "the VE's testimony was both unobjected to and uncontradicted," and therefore, Kameka's argument is forfeited. *Liskowitz,* 559 F.3d at 744. In addition, Social Security Ruling 00-4p "imposes an affirmative obligation on ALJs to ask vocational experts whether their testimony is consistent with the information in the DOT." *Surprise v. Saul*, 968 F.3d 658, 662 (7th Cir. 2020) (quoting SSR 00–4p at 4). Here, the ALJ

---

[3] As the Commissioner notes, this powerpoint was prepared by two agency employees from 2011 and those employees were not vocational experts.

performed that responsibility when he asked the VE if his testimony was consistent with the DOT. (R. 110). Kameka does argue there is any inconsistency between the VE's testimony of these two jobs and the DOT. As a result, this argument is clearly forfeited and does not warrant remand.

Next, Kameka argues that the ALJ erred in finding that she could perform the document preparer job because it exceeds her residual function capacity. Doc. [21] at 9. Kameka explains that the document preparer job requires a Reasoning Level of 3, which purportedly conflicts with the ALJ's hypothetical to the VE and his RFC finding. "Each occupation listed in the DOT is assigned, on a scale from 1 to 6, a 'reasoning development' level, . . . which constitutes a component of what the DOT calls the 'General Educational Development.'" *Mitchell v. Berryhill*, No. 17 C 6241, 2019 WL 426149, at *4 (N.D. Ill. Feb. 4, 2019); *Dictionary of Occupational Titles*, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (January 1, 2016). A Reasoning Level 3 job requires an employee to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form, . . . [and] [d]eal with problems involving several concrete variables in or from standardized situations." *Dictionary of Occupational Titles*, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (January 1, 2016).

Kameka claims that the ALJ's hypothetical to the VE requested jobs that would not require her to follow detailed instructions. Doc. [21] at 9. However, the ALJ did not phrase his hypothetical to the VE using that specific language. Rather, the ALJ asked the VE for jobs that require only simple work instructions. (R. 109). Nevertheless, as Kameka notes, a Reasoning Level 2 job requires that an employee carry out detailed but uninvolved written or oral instructions. *Mitchell,* 2019 WL 426149, at *5. Consequently, because a "Reasoning Level 3 job represents a higher level of reasoning development than a Reasoning Level 2 job . . . common sense indicates

that a Reasoning Level 3 job incorporates all the aspects of a Reasoning Level 2 job." *Id*. Therefore, while the document preparer job is classified as a Reasoning Level 3, it incorporates the Level 2 requirement to follow detailed instructions.

In addition, the DOT Reasoning Levels do not inherently conflict with an ALJ's RFC restrictions because the Social Security's regulations are markedly different at addressing a claimant's abilities. *See Edson W. v. Saul*, No. 19 C 2626, 2021 WL 1293845, at *10 (N.D. Ill. Apr. 7, 2021); *Mitchell,* 2019 WL 426149, at *4; *Eggleston v. Colvin*, No. 13 C 5208, 2015 WL 2208221, at *5 (N.D. Ill. May 7, 2015). For example, "[t]he regulations divide such abilities into only two categories— 'short and simple instructions' and 'detailed' or 'complex' ones—whereas the DOT uses a more graduated scale ranging from one to six that does not easily accommodate itself to the regulations' simple/complex dichotomy." *Stile v. Colvin*, No. 14 C 4379, 2017 WL 2908783, at *8 (N.D. Ill. July 7, 2017) (quoting *Thompkins v. Astrue*, No. 09 C 1339, 2010 WL 5071193, at *10 (N.D. Ill. Dec. 6, 2010)). As such, "a task may be 'simple' under the regulations and still involve the kind of 'detailed' tasks required under Level 2 reasoning." *Stile*, 2017 WL 2908783, at *8.

Moreover, the Seventh Circuit has concluded that simple work RFC restrictions do not prevent someone from performing Reasoning Level 3 jobs. *See Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (claimant with the cognitive capacity to follow simple instructions could perform jobs with a reasoning level of three); *Sawyer v. Colvin*, 512 F. App'x 603, 610–11 (7th Cir. 2013) (finding no conflict between a "simple tasks" restriction and reasoning level 3, and noting that "even workers who are markedly limited in their ability to understand, remember, and follow detailed instructions might still be able to perform jobs requiring level 3 reasoning development."). In sum, the ALJ's hypothetical to the VE and the RFC restriction of "simple work instructions"

are not in conflict with the record preparer occupation's Level 3 designation. (R. 20, 109). In other words, although the RFC restricts Kameka to simple work instructions, she still has the capacity to perform the record preparer occupation at a Level 3 designation. *See Vanhphenh S. v. Saul*, No. 18 CV 6121, 2021 WL 1315633, at *6 (N.D. Ill. Apr. 8, 2021) (finding that identified occupations at a Reasoning Level 2, alone without more, "do not make them inconsistent with the RFC's simple work-related restrictions."). All in all, the document preparer job does not exceed Kameka's RFC, and the Court finds no error with the ALJ's reliance on the VE's testimony.

**B.     Dr. Levitan's Evaluation**

Next, Kameka argues that the ALJ erred in his evaluation of Dr. Levitan's consultive examination. Doc. [21] at 10. The ALJ's evaluation of the medical opinion evidence was subject to new regulations pertaining to claims filed on or after March 27, 2017. 20 C.F.R. § 416.920c (2017). Under the new regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a). An ALJ is only required to articulate "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 416.920c(b). The regulations direct the ALJ to consider the persuasiveness of medical opinions using several listed factors, including supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 416.920c(a), (c). Supportability and consistency are the two most important factors. 20 C.F.R. § 416.920c(a). An ALJ must explain how he considered the factors of supportability and consistency in his decision, but he is not required to explain how he considered the other factors. 20 C.F.R. § 416.920c(b)(2). In assessing supportability, "[t]he more relevant the

8

objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." 20 C.F.R. § 416.920c(c)(1). As to consistency, "[t]he more consistent a medical opinion ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." 20 C.F.R. § 416.920c(c)(2).

In April 2019, Dr. Levitan completed a consultative examination of Kameka and concluded that: she could perform simple and routine tasks; she would have difficulty handling mild to moderate work pressure and stress; she could communicate with coworkers and a supervisor; and she could follow and understand instructions but could not be relied on to retain them for a number of working days. (R. 788-89). The ALJ found Dr. Levitan's findings somewhat persuasive. (R. 25). The ALJ explained that he considered all of the evidence including the claimant's recent therapy records, which describe the claimant's euthymic mood, and the claimant's activities of daily living (*e.g.* her ability to prepare simple meals, take public transportation, drive a car), and he found that not all of Dr. Levitan's opinions were supported by the record. *Id.* In reaching that conclusion, the ALJ cited to Kameka's behavioral health appointments at Family Health Center, her testimony, and her function report. *Id.*

Kameka argues that the ALJ failed to support his finding that Kameka's ability to prepare simple meals, take public transportation, or drive a car, was inconsistent with the opinion of Dr. Levitan that Kameka would have difficulty remembering instructions from one day to the next. Doc. [21] at 10. However, the ALJ did not rely on Kameka's ability to prepare meals or take public transportation to show that he disagreed with Dr. Levitan's finding. Rather, the ALJ's analysis on that issue is found earlier in the opinion. *See Winsted v. Berryhill,* 923 F.3d 472, 478 (7th Cir. 2019) ("The court applies a common-sense reading to the entirety of an ALJ's decision.");

9

*Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("it is proper to read the ALJ's decision as a whole."). In the preceding paragraphs of his decision, the ALJ noted that Kameka presented at Dr. Levitan's examination with difficulties and inconsistencies with understanding, remembering, or applying information. (R. 18). However, the ALJ also noted that Kameka was able to name a past president, two large cities, and correctly calculate math equations at Dr. Levitan's examination. *Id*. at 25. Next, the ALJ considered that Kameka expressed difficulty with following both written and spoken instructions in her function report. *Id.* at 18. The ALJ also noted that Kameka reported a short attention span and difficulty finishing tasks. *Id.* at 19. Further, citing to the Kameka's testimony and function report, the ALJ considered that Kameka did not experience problems following along with her television programs, and that she acknowledged her ability to drive a car, "which necessarily requires a person to adhere to traffic signs and signals, maintain a vehicle in a lane of traffic, respond to changes in traffic patterns, and either remember or follow directions." *Id.* Thus, the ALJ more than minimally articulated how he analyzed and weighed the supportability of Dr. Levitan's opinion that Kameka would have difficulty remembering instructions from one day to the next. As such, Kameka did not err in finding that Dr. Levitan's opinion was somewhat persuasive.

Next, Kameka argues that the ALJ did not adequately support his consideration of Dr. Levitan's opinion because, while he cited to Kameka's behavioral health appointments at Family Health Center in his analysis, he did not include a discussion of Kameka's functional limitations in those behavioral health records. Doc. [21] at 11. For example, Kameka claims the ALJ did not consider her paranoia, her audio and visual hallucinations, her belief that there is nothing wrong with her hallucinations; and her belief that her psychiatrist was plotting against her. *Id*. Contrary to Kameka's claims, the ALJ discussed the behavioral health records throughout his decision, and

he precisely mentioned the items Kameka claims were ignored. The ALJ noted that Kameka reported panic attacks, depression, hallucination, hearing voices, and paranoia at her behavioral health appointments. (R. 23, 24). The ALJ also noted Kameka's reports, at her behavior health appointments, that she did not trust her grandmother, that she believed her grandmother may try to poison her, and that her last psychiatrist was trying to put her away in a mental institution. *Id.* at 23. As such, the ALJ considered Kameka's behavioral health records in his analysis of Dr. Levitan's opinion with more than a mere scintilla of evidence. Consequently, the ALJ did not err in finding that Dr. Levitan's opinion was somewhat persuasive.

Nonetheless, even if the ALJ committed an error in his analysis of Dr. Levitan's opinion, which the Court does not find, the error is harmless because the ALJ's RFC is consistent with Dr. Levitan's suggested functional limitations. *Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2020) (emphasizing harmless error standard applies to judicial review of administrative decisions). For example, Dr. Levitan found that Kameka can perform simple and routine tasks, and the ALJ also determined that Kameka can sustain concentration to perform simple repetitive tasks. (R. 20, 788). Dr. Levitan determined that Kameka would have difficulty handling mild to moderate work pressure and stress, while the ALJ also found that Kameka needs to work in a low pressure and low stress work environment. *Id.* Next, Dr. Levitan found that Kameka could communicate with coworkers and supervisors. *Id.* at 788. Yet, the ALJ found that Kameka can only interact briefly and superficially with coworkers. *Id.* at 20. Finally, Dr. Levitan found that Kameka could follow and understand instructions but could not be relied on to retain them for a number of working days. *Id.* at 788-89. The ALJ determined that Kameka can understand, remember, and carry out simple work instructions requiring only occasional and simple work-related decision-making and occasional changes in the work setting. *Id.* at 20. Thus, the ALJ's RFC is consistent with Dr.

11

Levitan's suggested functional limitations, and Kameka does not identify any additional work restriction that she believes should have been included in the RFC to account for Dr. Levitan's findings. *See Morrison v. Saul*, 806 F. App'x 469, 474 (7th Cir. 2020); *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019).

**C.     RFC**

Kameka next contends that the ALJ erred in his RFC analysis. First, Kameka argues that the ALJ erred in not identifying an accommodation for her migraine headaches in the RFC. The RFC is "the most a person can do in a work setting despite the person's limitations." *Jeske v. Saul*, 955 F.3d 583, 593 (7th Cir. 2020) (citing 20 C.F.R. § 404.1545(a)(1)). In an RFC assessment, "an ALJ must include all of a claimant's limitations supported by the medical record." *Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021). Kameka states that the ALJ did not consider a 2018 medical note in the record stating that her headaches were throbbing in nature and associated with photophobia. Doc. [21] at 12; (R. 791). Further, Kameka argues that the ALJ erred in not considering a limitation for exposure to light. Doc. [21] at 12.

To begin, while the ALJ did not explain the contents of the 2018 medical note in his decision, the ALJ did in fact cite to this specific doctor visit, indicating photophobia, in his analysis of her migraines. *See* (R. 23, 791); *Deborah,* 994 F.3d at 788 (The Seventh Circuit has held that "an ALJ's adequate discussion of the issues need not contain a complete written evaluation of every piece of evidence.") (citations omitted) (internal quotes omitted). Second, the ALJ considered Kameka's migraines as well as her treatment with two different medications. (R. 23). As part of his analysis, the ALJ cited to a January 2018 medical record from a Sleep, Pulmonary, and Critical Care clinic noting that Kameka complained of migraine headaches. *Id.* at 516. The ALJ also considered a May 2018 note from her primary care doctor, Dr. Jerome Antony, stating

12

that she complained of migraines. *Id.* at 547. Next, the ALJ considered a June 2019 treatment note from a pain management appointment where Kameka reported migraine improvement with prescribed medications. *Id.* at 1009. Thereafter, the ALJ noted that some of Dr. Anthony's handwritten and somewhat illegible notes referenced migraine headaches later in the record. Yet, the ALJ noted that they did not document a significant increase of Kameka's symptoms or treatment, which would support greater limitations than those already included in the RFC. (R. 23). Finally, Kameka does not identify any doctor's opinion or specific medical evidence that would support a migraine restriction. As such, more than a mere scintilla of evidence supports the ALJ's analysis of Kameka's migraines and his decision to exclude a limitation for Kameka's migraines in the RFC.

Second, Kameka argues that the ALJ did not give enough consideration to her obesity, and the effect her obesity has on her multiple impairments, specifically her sleep apnea. Doc. [21] at 12-13. The Court disagrees. "While obesity is no longer a standalone disabling impairment the ALJ must still consider its impact when evaluating the severity of other impairments." *Stephens v. Berryhill*, 888 F.3d 323, 328 (7th Cir. 2018). Here, the ALJ gave significant consideration to Kameka's impairments in the context of her obesity throughout his decision. First, at step two, the ALJ found that both obesity and sleep apnea were severe impairments. (R. 16). Second, at step three, pursuant to SSR 19-2p, the ALJ considered obesity as an aggravating factor to any other severe impairment, that in combination would meet a listing. *Id.* at 18. However, the ALJ found that the medical evidence did not indicate that Kameka's obesity contributes to any other severe impairment. *Id.* Third, at step four, the ALJ noted that Kameka was obese with a body mass index of 37.4 in December 2019. *Id.* at 23. He further considered that the record did not show that Kameka's obesity alone or in combination with any other impairment, causes musculoskeletal,

13

cardiovascular, respiratory or other symptoms that would limit the claimant's ability to work. *Id.* Fourth, the ALJ concluded that he considered Kameka's statements and the objective medical evidence of obesity and sleep apnea in his determination of the RFC. *Id.* at 26. *See Stephens*, 888 F.3d at 328 (finding that the claimant failed to demonstrate that the ALJ gave insufficient consideration to his obesity and its impact where the ALJ considered the claimant's obesity at step two, step three, and step four of his decision.).

With respect to her sleep apnea, the ALJ considered Kameka's symptoms, such as fatigue, and further clarified that he accounted for her sleep apnea in the RFC. *Id.* at 21, 22. The ALJ stated that the record did not document Kameka's alleged sleep related issues to the degree described at hearing, and therefore the ALJ found that her sleep apnea only supports the limitations in the residual functional capacity, including the limitation regarding hazards, such as unprotected heights, and exposed, moving, mechanical parts. *Id.* at 22. Kameka does not direct the Court to any part of the record indicating any greater limitation, nor does she suggest any. *See Brian J. v. Saul*, 438 F. Supp. 3d 903, 911 (N.D. Ill. 2020) (quoting *Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018) ("There is no error when there is no doctor's opinion contained in the record [that] indicated greater limitations that those found by the ALJ."); *see also Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018) (the claimant must provide evidence that his conditions "support specific limitations affecting [his] capacity to work"). Furthermore, Kameka argues that the ALJ failed to consider some of Kameka's specific statements regarding her sleep apnea symptoms. Doc. [21] at 13. However, as stated earlier, the ALJ does not need to mention every piece of evidence in the record, and to the extent Kameka is asking the Court to reweigh the evidence, the Court will not do that. *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020) (The court "will not reweigh evidence or substitute [its] judgment for [that of] the ALJ's."). Accordingly, the Court finds that

14

the ALJ adequately considered the limiting effect of Kameka's obesity in combination with her other impairments, including her sleep apnea. In sum, the ALJ reasonably concluded that no additional limitations were warranted by the record, and that Kameka is capable of a reduced range of sedentary work despite her obesity and sleep apnea.

**D.      Subjective Symptom Analysis**

Turning to Kameka's final challenge, she argues that the ALJ made errors in his subjective symptom analysis. When assessing a claimant's subjective symptom allegations, an ALJ must consider several factors, including the objective medical evidence, the claimant's daily activities, his level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5, 7-8 (Oct. 25, 2017). "An ALJ need not discuss every detail in the record as it relates to every factor," but an ALJ may not ignore an entire line of evidence contrary to her ruling. *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022). "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Id.* at 1279; *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support"). "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts*, 27 F.4th at 1278.

First, Kameka argues that the ALJ failed to explain what aggressive treatment was available for her migraine headaches, since according to Kameka, the ALJ noted that her treatment was routine/conservative. Doc. [21] 13-14. As stated earlier, the ALJ sufficiently considered Kameka's complaints of migraines, her medication treatment, and her improvement with medication. More importantly, the ALJ never indicated in his decision that her treatment was

routine or conservative or that a more aggressive regimen was appropriate. *Cf. Thomas v. Colvin*, No. 13 C 3686, 2015 WL 515240, at *4 (N.D. Ill. Feb. 6, 2015) (finding that the ALJ failed to identity what aggressive treatments would have been appropriate where the ALJ stated that the claimant's treatment was conservative). Thus, because Kameka misstated the ALJ, her argument is baseless, and the Court will not address it further.

Second, Kameka argues that the ALJ alluded to "the absence of a recommendation for surgery" for her lumbar degenerative disc disease and radiculopathy and failed to explain how surgery would have resolved her symptoms. Doc. [21] at 14. The Court is unclear about what part of the ALJ's decision Kameka is referring to, and she does not provide a citation. Notably, the ALJ does not allude to an absence of surgery anywhere in his opinion. However, as part of the ALJ's analysis of Kameka's back related issues, the ALJ did note that based on diagnostic imaging and her condition and abilities at 2019 neurosurgery evaluation, the medical provider did not recommend any additional treatment. (R. 22). Yet, the ALJ's statement does not by itself suggest that the ALJ alluded to an "absence of recommendation for surgery." The Court will not address this argument further as it is meritless.

Third, Kameka contends that the ALJ erred in noting that she did not take her medication for two months, without considering possible reasons for such behavior. Doc. [21] at 15. An ALJ may consider infrequent treatment in support of an adverse credibility finding where the claimant does not have a good reason for the infrequency of treatment. *See Primm v. Saul*, 789 F. App'x 539, 545–46 (7th Cir. 2019); *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008); *see also Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("The claimant's good reasons may include an inability to afford treatment, ineffectiveness of further treatment, or intolerable side effects."). However, the ALJ "must not draw any inferences about a claimant's condition from this failure

unless the ALJ has explored the claimant's explanations as to the lack of medical care." SSR 96-7P (S.S.A. July 2, 1996); *Craft*, 539 F.3d at 678–79. Here, Kameka once again misstated the ALJ's statements. Kameka claims that the ALJ failed to consider how her mental health issues, including hallucinations, might have contributed to her inconsistency with medication. However, the ALJ did not conclude that Kameka was inconsistent with her medication regimen. The ALJ stated that Kameka was prescribed two medications for her mental health (Topiramate and Clonazepam). Following that statement, the ALJ noted a single occasion when Kameka was not entirely compliant with her anxiety/panic medication (Clonazepam). (R. 24). The ALJ considered an October 2019 emergency room visit where Kameka was seeking a medication refill of her anxiety/panic medication after two months of trying to wean herself off it. (R. 1040). Furthermore, at the hearing, the ALJ specifically asked Kameka if she was taking medication, and Kameka confirmed that she was taking "a lot" of medication. (R. 104). Kameka did not express any issue with her medication regimen or any other lapse in treatment. Put simply, the ALJ did not draw any inferences about Kameka's condition based on a single incident when she did not take her anxiety medication for two months. Further, based on her testimony, it appears that the ALJ was aware that Kameka otherwise readily complied with her medication regimen. Ultimately, even if the ALJ's reasoning on this point "was not airtight," the Court cannot say his overall finding was "patently wrong." *Matthews v. Saul*, 833 F. App'x 432, 437-38 (7th Cir. 2020). Thus, the ALJ's subjective symptom analysis was not patently wrong.

## **CONCLUSION**

For the reasons set forth above, Kameka's request for reversal and remand [16, 21] is denied, the Acting Commissioner's motion for summary judgment [24, 25] is granted, and the ALJ's decision is affirmed.

**SO ORDERED.**

Dated: August 8, 2022

_____
Sunil R. Harjani
United States Magistrate Judge